**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GLOBAL MATERIAL TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 12-cv-01851 |
| | ) | |
| DAZHENG METAL FIBRE CO., LTD et al., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants' request for judicial notice [95], motion to dismiss the first amended complaint [101], and motion to stay and abstain [102], and Plaintiff's motion to strike [103] and motion for leave to file *instanter* a surreply in opposition to Defendant's motion to stay and abstain. [114]. For the reasons stated below, the Court grants in part and denies in part the request for judicial notice [95], denies the motion to stay and abstain [102], denies as moot the motion for leave to file *instanter* a surreply [114], denies the motion to strike [103], and denies without prejudice the motion to dismiss [101]. The Court directs the parties to file supplemental briefs of no more than ten pages addressing the choice-of-law issues discussed below – and only those issues – no later than 2/6/2013.

**I.   Background**

Because this matter is before the Court on a motion to dismiss, the Court takes as true all factual allegations in the amended complaint and draws all reasonable inferences in favor of Plaintiff. *E.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

1

Plaintiff Global Material Technologies ("GMT") is a New York corporation with its principal place of business in Illinois and various facilities and subsidiaries around the globe. Through a holding company, GMT owns a 25% stake in Chinese corporation Dazheng Metal Fibre Co., Ltd. ("DNZ"), which, like GMT, produces and sells metallic wool products. From 1996 to 2009, GMT was DNZ's primary customer, accounting for 75-90% of DNZ's overall sales. The relationship between GMT and DNZ deepened in 2003, when GMT outsourced some of its manufacturing operations to DNZ's Chinese facilities. It deepened further in 2006 when GMT, with the support of its largest customer, shut down its Chicago plant and shifted 100% of the production of its largest customer's products to DNZ's China facilities. At the peak of the parties' relationship, GMT and DNZ transacted more than $1,000,000 per month in sales.

The close relationship between GMT and DNZ enabled DNZ to gain access to confidential and proprietary business information that GMT typically kept tightly under wraps. Over the course of the parties' relationship, DNZ became familiar with GMT's internal operations and competitive pricing and economic strategies. DNZ also became privy to sensitive information about GMT's customers, such as their contact information, product specifications, and ordering habits. Some of this information was transmitted directly to DNZ's president, Defendant Dong Jue Min, by GMT's president, Norman Soep.

Eventually, however, the parties' relationship turned sour. During 2007 and 2008, DNZ refused to make certain products, delayed in producing others, and shipped defective products to GMT's customers. Despite its promises to do so, DNZ did not credit GMT for the defective goods. DNZ also shipped more than 1.3 million pounds of products that GMT's customers did not order, and refused to stop doing so despite GMT's protests. GMT was able to sell some of these goods but has been forced to pay for the storage of the rest.

All the while, DNZ was using the information that it had gleaned about GMT's operations and customers to undercut GMT's prices and sell to GMT's customers, both directly and through one or more subsidiaries. In a partially successful attempt to retain its customers, GMT produced the needed items in its Chicago plant at a substantial loss. GMT repeatedly requested – through e-mails, board meetings, and personal visits from GMT executives – that DNZ provide GMT with more competitive pricing, but DNZ, acting through Dong Jue Min or pursuant to his orders, refused to acquiesce. Instead, DNZ offered GMT a pricing formula that failed to take into account market conditions and, though various subsidiaries including Defendant Zhuhai Trugroup Internationa Co., Ltd. ("Tru Group"), made further attempts to erode GMT's customer base by continuing to use GMT's confidential information to undercut its prices. GMT has lost several of its largest customers and has also lost market position in Central and South America and Asia.

Beginning in 2009, GMT questioned DNZ about DNZ's relationship with Tru Group. In response, Dong Jue Min made numerous misrepresentations about the relationship between DNZ and Tru Group. Eventually, in early 2011, GMT learned that DNZ owned Tru Group and had been passing GMT's confidential information to it. In February 2011, GMT filed suit against DNZ, Tru Group, and Dong Jue Min ("Defendants") in the United States District Court for the Middle District of Tennessee. GMT alleged that Defendants intentionally interfered with its business relations by using its confidential information to lure away its customers and conspired with one another to do so. It also alleged that DNZ violated the Uniform Trade Secrets Act by misappropriating GMT's confidential information, and violated the United Nations Convention on Contracts for the International Sale of Goods ("CISG") by shipping non-conforming and unordered consumer goods to GMT.

On Defendants' motion, the case was transferred to this Court pursuant to 28 U.S.C. § 1404(a). Shortly after the transfer, Defendants filed what they captioned a "Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. of Civ. P. 12(B)(6) and the *Colorado River* Doctrine or, in the Alternative, Abstain from Reaching the Merits of Plaintiff's Claim Under the Convention on Contracts for the International Sale of Goods." [94]. They also filed a "Request for Judicial Notice" in support of their combined 12(b)(6)/abstention motion. [95]. GMT moved to strike Defendants' combined motion and opposed their request for judicial notice. [97]. After a status hearing, the Court granted in part GMT's motion to strike and gave Defendants leave to refile their combined 12(b)(6)/abstention motion as two separate motions, one for dismissal under Rule 12(b)(6) and one for abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). [100]. The Court took Defendants' request for judicial notice under advisement. [100].

Defendants subsequently bifurcated their combined motion into two separate filings: a motion to dismiss GMT's Intentional Interference with Business Relations, Uniform Trade Secrets Act, and Civil Conspiracy claims pursuant to Federal Rule of Civil Procedure 12(b)(6), [101], and a motion to stay GMT's CISG claim pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). [102]. GMT once more moved to strike Defendants' motion to dismiss, and has renewed its opposition to Defendants' requests for judicial notice [103] and abstention [111]. GMT has also sought leave to file *instanter* a surreply in opposition to Defendants' motion for abstention. [114].

**II.     Analysis**

   **A.     Requests for Judicial Notice**

Defendants ask the Court, "pursuant to Rule 201 of the Federal Rules of Evidence and the Court's inherent authority," to take judicial notice of a contract, a translated judgment from a Chinese court, and several printouts of private corporate websites "submitted in support" of their motions. [95]. Defendants have also submitted for the Court's consideration excerpts from "depositions of GMT's principal witnesses," [101-1 at 20]; [101-2 – 101-5], exhibits used during these depositions, [101-6], and additional website printouts. [101-7 – 101-9]. Defendants have clarified that "[t]he Chinese judgment is submitted solely for the Court's reference in support of the Defendants' *Colorado River* Doctrine argument," [95 at 2], while the remaining submissions are "solely in support of dismissing the [first amended complaint] *with prejudice*." [105 at 2].

Judicial notice is a doctrine that authorizes the finder of fact to waive proof of facts that cannot reasonably be contested. See *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997); see also *Vajk v. Tindell*, No. 97-2030, 1998 WL 60391, at *3 (7th Cir. Feb. 9, 1998) ("[J]udicial notice is an adjudicative device that allows a court to accept as true certain facts or propositions without the introduction of additional evidence."). Under Fed. R. Evid. 201(b), courts may take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they are either "generally known within the * * * court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). For instance, it has long been established that "federal courts may * * * take notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue." *Green v. Warden, U.S. Penitentiary*, 699

5

F.2d 364, 369 (7th Cir. 1983). They may also take notice of other matters of public record. See, *e.g.*, *Pickett v. Sheridan Health Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011).

Considering matters outside the pleadings and their attachments at the motion to dismiss stage typically converts the motion into one for summary judgment. See Fed. R. Civ. P. 12(d). But courts may "take judicial notice at any stage of the proceeding," Fed. R. Evid. 201(d), and "there exists a narrow exception to the Rule 12(d) instructions that permits a district court to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment." *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008). A similar exception allows courts to consider "documents that are critical to the complaint and referred to in it" without converting a motion to dismiss into one for summary judgment. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); see also *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (upholding district court's consideration of documents "to which the Complaint had referred, that * * * were concededly authentic, and that * * * were central to the plaintiffs' claims").

Defendants argue that the contract they have proffered comes within this latter exception. They claim that this document, a 2005 contract between GMT and DNZ, provides the terms and conditions of the parties' business relationship and is therefore central to GMT's claims. See [95 at 1]. GMT disputes the authenticity of the contract and contends that the document is neither incorporated into nor critical to its amended complaint. See [97 at 8-9]; [103 at 4, 6]. The Court concludes that the contract, the authenticity of which it need not address at this time, is neither critical to nor referred to in the amended complaint and as such is not appropriate to consider in connection with Defendants' motion to dismiss. GMT's amended complaint mentions the word "contract" only once, on the eighteenth page of the twenty-one-page document, in the heading

preceding GMT's CISG allegations, and does not assert any claims apparently dependent upon the existence and/or contents of a contract. There is no mention of the year 2005, the date of the proffered contract, nor is there any contention that GMT and DNZ ever entered into a formal written contract in addition to the purchase orders they exchanged. Indeed, Defendants concede that "strikingly absent from the [amended complaint] is any explicit reference to" the proffered contract. [101-1 at 3]. (They contend that the contract is "implicitly referenced" because "GMT alleges a longstanding business relationship with DNZ and references DNZ's pricing formula." [101-1 at 3 n.5].) The Court denies Defendants' request that it judicially notice the contract at this stage of the case.

The Court also denies Defendants' requests that it judicially notice various depositions, deposition exhibits, and printouts of websites. Defendants contend that the depositions and accompanying exhibits undermine GMT's claims of intentional interference and misappropriation. See [101-1 at 20-23]. They claim that the websites, at least one of which was allegedly maintained by GMT itself, and all of which are allegedly publicly accessible, undermine GMT's contentions that the information they allegedly appropriated was confidential. See [97 at 2-5]; [101-1 at 23-25]. Defendants do not, in any of their numerous papers addressing the subject, explain why these materials are the appropriate subjects of judicial notice, *i.e.*, that they are matters of public record, or generally known, or come from sources whose accuracy cannot reasonably be questioned; they merely contend that GMT's claims cannot survive in the face of their evidence. Such an argument is one better made at the summary judgment stage; a motion to dismiss is designed to test the sufficiency of a complaint, not the merits of the case. See *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). And the Court is not inclined to make on Defendants' behalf arguments as to the propriety of judicial notice. See *Damon v.*

7

*Grand Trunk W. R.R., Inc.*, No. 2:05-cv-60, 2006 WL 2699736, at *5 (N.D. Ind. Sept. 19, 2006) ("The Court will not do a party's legal research for it nor make a party's arguments for it."). Should Defendants wish the Court to examine their proffered materials – and consider them in connection with the merits of GMT's case rather than the sufficiency of its complaint – they may submit them in connection with their summary judgment filings or at trial. The Court denies Defendants' requests that it judicially notice their proffered depositions, deposition exhibits, and website printouts. The Court will not consider these materials (or the 2005 contract) in connection with its review of Defendants' motion to dismiss.

The Court will consider, however, to the extent necessary to resolve Defendants' abstention motion, the existence of the Chinese judgment and accompanying foreign proceedings. Without some examination of the Chinese proceedings, the Court will be unable to conduct the analysis necessary to rule on Defendants' motion to abstain. See *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645-48 (7th Cir. 2011) (setting forth analytical framework for motions to stay or abstain pursuant to *Colorado River*). Indeed, even GMT, which contests the authenticity of Defendants' unofficial translation of the judgment and disputes the fundamental fairness of the Chinese proceedings, relies on Defendants' proffered translation in its brief opposing abstention. See [111 at 4, 11]. The scope of the Court's judicial notice of the judgment will be limited to that necessary to resolve the abstention issue. The Court will not consider the substantive rulings made by the Chinese court (GMT has represented that the judgment is being appealed in any event, see [111 at 2]), nor will it consider the judgment in connection with the motion to dismiss.

B.     **Motion to Stay and Abstention**

Defendants have asked the Court to stay or abstain from hearing GMT's CISG claim in deference to ongoing proceedings in the People's Court of Jinwan District, Zhuhai City, Guangdong Province, the People's Republic of China ("Chinese Litigation"). See [102].

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court created "a narrow exception" to the general rule that the pendency of a lawsuit in state court does not bar proceedings concerning the same manner in federal court. See *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The same principles apply to foreign proceedings. See *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518-20 (7th Cir. 2001); *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999).

The *Colorado River* doctrine provides that in "some exceptional cases," federal courts should "defer to a concurrent state-court case as a matter of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Huon*, 657 F.3d at 645 (quoting *Colo. River*, 424 U.S. at 817). Nonetheless, the Supreme Court has made clear "that federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction that Congress has given them." *Id.* (quoting *Colo. River*, 424 U.S. at 824). The district court should not go looking for a substantial reason to exercise federal jurisdiction; rather, its task is "to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' * * * to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983).

In determining whether a stay or dismissal is appropriate under the *Colorado River* doctrine, the Court must first ask whether the federal and state cases – cases, not individual causes of action – are parallel. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498 (7th Cir. 2011). In doing so, "the court must ascertain whether 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Huon*, 657 F.3d at 646 (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir.2004)); see also *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006) ("Among other things, to determine whether two suits are parallel, a district court should examine whether the suits involve the same parties, arise out of the same facts, and raise similar factual and legal issues."). This critical threshold question is a practical one that focuses on "whether there is a 'substantial likelihood that the state litigation will dispose of *all claims* presented in the federal case,'" *Adkins*, 644 F.3d at 499 (quoting *Clark*, 376 F.3d at 686) (emphasis added); "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Moses H. Cone*, 460 U.S. at 28. One important factor to consider in resolving the threshold question of parallelism is "whether both cases would be resolved by examining largely the same evidence," *Huon*, 657 F.3d at 647; a second is whether the litigants may press their claims in the alternate forum, see *Chico Serv. Station, Inc. v. Sol Puerto Rico Ltd.*, 633 F.3d 20, 31 (1st Cir. 2009) ("[W]e are leery of abstaining where litigants may be unable to press their federal claims in a state forum."); a third is whether the remedies sought are the same in both cases. See *Fru-Con Constr. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 536 (8th Cir. 2009); *Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 524 (2d Cir. 2001). If this question is answered in the negative, the proceedings are not parallel, the *Colorado River* doctrine does not apply, and a stay is not proper. *Id.* at 646. "'If there is any doubt that cases are

parallel, a district court should not abstain.'" *Id.* (quoting *AAR Int'l*, 250 F.3d at 520 (7th Cir.2001)).

Notwithstanding GMT's apparent concession to the contrary, see [111], the Court has serious doubts that the Chinese Litigation is parallel to the present case. The parties appear to agree, in accordance with the unofficial translation of the Chinese judgment proffered by Defendants, that the Chinese Litigation concerns solely DNZ's alleged breaches of sales invoices – the alleged shipments of defective, non-conforming, or unordered goods. GMT did not pursue in the Chinese Litigation any claims mirroring or analogous to the misappropriation, intentional interference, or conspiracy claims it asserts here, nor did it seek any relief against Tru Group or Dong Jue Min. The parties are not the same in both actions, and even though GMT's CISG claim appears to be similar to the claims asserted in the Chinese Litigation, the likelihood that the Chinese Litigation "will dispose of all claims presented in the federal case" is miniscule at best. This case is thus analogous to *AAR International, Inc. v. Nimelias Enterprises, S.A..*, 250 F.3d 510, 520 (7th Cir. 2001), in which the Seventh Circuit concluded two suits were not parallel in large part because some of the plaintiff's claims were "not currently before the Greek courts in any of the Greek actions, and it does not seem likely that any of the Greek courts will resolve the legal and factual issues supporting those claims in deciding the claims actually before them." Other factors also suggest that the proceedings are not parallel. The evidence needed to prove GMT's Chinese claims necessarily differs to some degree from that required to prove misappropriation, intentional interference, or a conspiracy. It is not clear on the record before the Court whether these claims are available in the Chinese legal system, and the remedies that GMT seeks for its misappropriation claim in particular – exemplary damages predicated on Defendants' alleged unjust enrichment and willful and malicious misappropriation, see Tenn.

Code. Ann. § 47-25-1704 – are different in nature than the pure compensatory damages it seeks in connection with its claims in the Chinese Litigation. In the face of all these considerations, the Court concludes that the actions are not parallel.[1] Abstention under *Colorado River* would therefore be improper. The Court respectfully denies Defendants' motion to stay and abstain, [102], and denies as moot GMT's motion for leave to file *instanter* a surreply [114].[2]

C.    **Motion to Strike & Motion to Dismiss**

Defendants have moved to dismiss GMT"s misappropriation, intentional interference, and conspiracy claims pursuant to Rule 12(b)(6). [101]. Defendants assert that these claims are insufficient under Illinois law, which they in cursory and conclusory fashion argue is applicable. See [101 at 5]. GMT substantively responded neither to Defendants' choice-of-law assertions nor their contentions that the amended complaint failed to state a claim upon which relief can be granted. Instead, it moved to strike Defendants' motion, arguing that the motion impermissibly relied on extrinsic evidence and was otherwise too confusing to enable a response. See [103 at 7] ("It should not be GMT's burden to disentangle Defendants' improper motion, nor should GMT

---

[1] The Court need not proceed to the second stage of the *Colorado River* analysis, in which it would consider whether exceptional circumstances justify stay or abstention of the parallel federal action. See *Huon*, 657 F.3d at 647-48.

[2] "It may be that [GMT] eventually will face the possibility that [its] federal suit [or at least its CISG claim] is barred by claim preclusion * * *. But when [GMT] chose to initiate separate suits in [foreign] and federal courts, [it] accepted the risk that an unfavorable judgment in the case that finished first might preclude [its] litigation in the other forum. Although at first blush it may seem inefficient to allow both cases to proceed, the *Colorado River* doctrine focuses on a federal court's obligation to exercise its jurisdiction, with preclusion doctrines operating as a backstop to ensure that concurrent proceedings do not result in inconsistent judgments. The *Colorado River* doctrine is not intended to give defendants the upper hand by stalling the federal case to wait for a favorable final judgment in the [foreign] proceeding that can then be used to bar the plaintiff's claims in federal court." *Huon*, 657 F.3d at 649-50 (citations omitted); see also *cf. Kline v. Burke Constr. Co.*, 260 U.S. 226, 230 (1922) ("Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by application of the principles of *res adjudicata*.").

be required to figure out how to response to a motion to dismiss that predicates so many of its arguments on facts that are found nowhere in the Complaint.").

The Court denies GMT's motion to strike [103]. Although Defendants' memorandum supporting its motion does occasionally include facts not asserted in the amended complaint, and at times makes arguments akin to those typically asserted at the summary judgment stage, it is not so woefully befuddling or inadequate as to preclude a substantive response.

Yet the Court nonetheless denies Defendants' motion to dismiss [101] without prejudice. Defendants' arguments are predicated entirely on their fairly cursory conclusion that Illinois law applies; they argue that GMT fails to state a claim under Illinois law. This case originated in Tennessee, however, and involves conduct that took place in China, and neither GMT nor Defendants have addressed the potential impact of those facts on this Court's choice-of-law analysis. *Cf. Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990) ("A transfer under § 1404(a) * * * does not change the law applicable to a diversity case.").[3] GMT's amended complaint, which was filed in Tennessee prior to this case's transfer, contains a solitary reference to Tennessee statutory law, and does not mention Illinois or Chinese law at all. This is not to say that Illinois law will not ultimately apply; the applicable choice-of-law rules (of Tennessee or Illinois) may well provide that Illinois law should govern the outcome of this case. Or it may transpire that Illinois law and Tennessee law are substantially the same in all pertinent respects – in which case choice of law becomes a moot point, see *Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 n.4 (7th Cir. 2012) – or even that Chinese law may apply to some of the claims. See *Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.*,

---

[3] Although the Court has diversity jurisdiction over this case, see 28 U.S.C. § 1332(a)(2), it also has original jurisdiction over the CISG claim pursuant to 28 U.S.C. § 1331, see *BP Oil Int'l, Ltd. v. Empresa Estatal Petroleos de Ecuador*, 332 F.3d 333, 336-37 (5th Cir. 2003), and may have jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

391 F.3d 871, 879 (7th Cir. 2004). The parties, not the Court, should address these questions in the first instance. The Court therefore directs the parties to file supplemental briefs of no more than ten pages addressing the choice-of-law issues – and only the choice-of-law issues – no later than 2/6/2013.

### III. Conclusion

For the reasons stated above, the Court grants in part and denies in part the request for judicial notice [95], denies the motion to stay and abstain [102], denies as moot the motion for leave to file *instanter* a surreply [114], denies the motion to strike [103], and denies without prejudice the motion to dismiss [101]. The Court directs the parties to file supplemental briefs of no more than ten pages addressing the choice-of-law issues discussed herein – and only those issues – no later than 2/6/2013.

Dated: January 7, 2013

_____
Robert M. Dow, Jr.
United States District Judge